UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-11-00671 SBA (DMR) |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S REQUEST FOR RECONSIDERATION OF PRETRIAL RELEASE REVOCATION ORDER |
| CLAUDIA ROBINSON, | |
| Defendant. | |

## I. INTRODUCTION AND BACKGROUND

Defendant Claudia Robinson is charged by indictment with violations of 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 287 (false claims); 18 U.S.C. § 1028A (identity theft); and 26 U.S.C. § 7212(a) (obstruction). Ms. Robinson initially appeared before this court on September 26, 2011. The United States moved for Defendant's detention pursuant to the Bail Reform Act, 18 U.S.C. § 3142, *et seq*. After conducting a hearing, the court released Defendant that day on an unsecured $50,000 bond and other conditions of release, and also ordered Pretrial Services to prepare a post bail study. [Docket No. 4.] Based on the results of the post bail study, the court

RELEASE ORDER
CR 11-70756 MAG (DMR)          1

modified the release order to add Defendant's father and son as co-signors, and to require drug, alcohol, and mental health counseling and drug/alcohol testing as directed by Pretrial Services. [Docket No. 12.]  The court conducted a bail review hearing on December 14, 2011 and ordered that Defendant reside in a halfway house on "lock-down" conditions. [Docket No. 24.]  On December 20, 2011, the court held another bail review hearing, which resulted in the revocation of Defendant's pretrial release. [Docket No. 26.]   Defendant subsequently requested and was granted substitution of counsel. [Docket No. 31.]  Her current counsel now seeks reconsideration of the revocation order, in light of Defendant's request to be evaluated for placement at New Bridge Foundation drug and alcohol treatment center. [Docket No. 36.]  For the reasons stated below, the court denies Defendant's request for reconsideration of the revocation order.[1]

## ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release.  If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community.  Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c).  In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also*

---

[1]  During the pendency of this request for reconsideration, Defendant filed for *de novo* review of the detention order pursuant to 18 U.S.C. § 3145(b). [Docket No. 37.]

RELEASE ORDER
CR 11-70756 MAG (DMR)                              2

*United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception").

However, a defendant who is released and subsequently violates a release condition is subject to revocation of release, an order of detention, and a prosecution for contempt of court. 18 U.S.C. § 3148(a). The judicial officer must order detention if there is probable cause that the defendant committed a crime while on release, or clear and convincing evidence that the defendant violated any other release condition, and (1) conditions cannot be fashioned to assure the defendant's appearance in court, or the safety of the community or another person, or (2) the defendant is unlikely to abide by any condition or combination of conditions of release. § 3148(b).

In this case, the court initially released Defendant. Although Defendant had a criminal record, the charges in this case as well as her prior criminal history did not indicate that she posed an unmitigable risk of flight or danger to the community as defined by the Bail Reform Act. The court released Defendant on a $50,000 unsecured bond to live in her Berkeley residence with her family. The proffer made in support of her release included the fact that she was several months pregnant and lived with her husband, four children, and an infant grandson. The following week the court modified the release order to add Defendant's son and father as co-signors on the bond, and to address potential drug, alcohol, and mental health issues that came to light through the post-bail review conducted by Pretrial Services.

Defendant's situation and behavior unraveled over the ensuing months. On November 29, 2011, the court received a violation memorandum from Defendant's Pretrial Services officer. The officer reported that on the day the court modified the release order to add drug testing, Defendant tested positive for marijuana, opiates, and cocaine use.[2] Defendant subsequently

---

[2] Because this positive test could have resulted from drug use that took place prior to the court's modification of the release order to include drug-related prohibitions, the officer did not treat the positive test as a violation of the conditions of her release.

RELEASE ORDER
CR 11-70756 MAG (DMR)                3

failed to report to her supervising officer several times and repeatedly refused to return phone calls. The officer also expressed the concern that Defendant's residence was not a suitable placement. During an October 18, 2011 home visit, one of the co-signors on Defendant's release bond blatantly smoked marijuana in the officer's presence. Based on the information in the violation memo, the court ordered a bail review hearing.

Defendant did not appear at the December 8, 2011 bail review hearing. Defense counsel reported that Defendant may have miscarried and that she was under medical orders not to leave home until December 14, 2011. The court continued the hearing to that date at Defendant's request. [Docket No. 22.] At the December 14, 2011 hearing, the court modified the conditions of Defendant's release to require her to reside in a halfway house. [Docket No. 24.] The court observed that Defendant was erratic and somewhat combative during the hearing.

The following day, the court learned that Defendant did not report to the halfway house until late the previous evening. Upon her arrival, an incident ensued that resulted in Defendant's admission to San Francisco General Hospital. Defendant reportedly returned to the halfway house the next morning, but was denied admission due to her earlier behavior. The court set another bail review hearing to take place on December 16, 2011. Defendant failed to appear. Defense counsel reported that he had received a call from Defendant's husband that Defendant was going to Highland Hospital due to an unspecified medical condition. The court continued the bail review hearing to December 20, 2011 and ordered Pretrial Services to arrange for an evaluation by New Bridge Foundation prior to the hearing. [Docket No. 25.]

Defendant initially failed to appear on December 20, 2011, even though the Pretrial Services officer reported that she had just been evaluated by a New Bridge representative in the courthouse. The officer reported that New Bridge was not inclined to accept Defendant at this time because she had expressed her unwillingness to participate, and that if she were admitted, Defendant would present a high risk of flight from the program. The officer also reported that Defendant continued to refuse to provide records to Pretrial Services to verify that she was

receiving substance abuse treatment through a Berkeley-based clinic.[3]  Defendant finally appeared at the bail review hearing twenty minutes late.  The court observed her to be disheveled and erratic.  After taking proffers from both sides, the court revoked Defendant's release and ordered her detention pending trial.  [Docket No. 26.]

It is irrefutable that Defendant failed to comply with the conditions of her release.  The court recognizes that Defendant's medical issues and addiction may have contributed to her noncompliance as well as her behavior in court.  However, even though Defendant now claims that she regrets her prior behavior and is willing to participate in the New Bridge program, the court continues to find that Defendant is unlikely to abide by any condition or combination of conditions of release pursuant to 18 U.S.C. § 3148(b).  The court repeatedly attempted to modify Defendant's conditions of release to allow her to remain out of custody, and Defendant repeatedly failed to follow those conditions.  The court finds that Defendant's high risk behavior makes her an unsuitable candidate for placement at New Bridge and also finds that it cannot fashion any other viable combination of release conditions.  For these reasons, the court denies Defendant's motion for reconsideration of the revocation order.

IT IS SO ORDERED.

DATED: March 19, 2012

DONNA M. RYU
United States Magistrate Judge

---

[3] The officer subsequently reported that Defendant had finally signed a release for the records and that the records revealed positive drug tests.